UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BRANDON CALEB,<br><br>Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC,<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 4:26-cv-00197 |

**DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S**
**MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Defendant Equifax Information Services LLC ("Equifax"), by counsel, moves the Court to dismiss Plaintiff's Amended Complaint,[1] pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and shows the Court as follows:

## I. INTRODUCTION

Plaintiff Brandon Caleb's claims fail as a matter of law. Section 1681g of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA") requires consumer reporting agencies to disclose the information in a consumer's file at the time of the request. It does not obligate CRAs to manufacture information that does not exist, populate blank fields, or provide data that has never been furnished to them. Here, Plaintiff seeks to convert Section 1681g into an unlimited disclosure mandate that every conceivable field be filled for every account, even where such data does not exist or does not apply. His claims rest on an implausible legal theory and conclusory allegations

[1] Defendant filed its original motion to dismiss with respect to Plaintiff's Complaint on February 17, 2026. Plaintiff then filed his Amended Complaint March 16, 2026, but did not seek leave to do so. To the extent that the Court grants Plaintiff leave to file the Amended Complaint or it is otherwise deemed timely filed, this renewed Motion to Dismiss is being filed in an abundance of caution.

of willfulness. The law does not recognize such claims. For these reasons, the Amended Complaint should be dismissed, with prejudice.

## II. STANDARD

A court has authority to dismiss a suit for failure to state a claim upon which relief can be granted if the complaint clearly demonstrates that the plaintiff cannot prove any set of facts that would entitle it to relief. *Hishon v. King & Spalding*, 467 U.S. 69 (1984); *Power Entm't, Inc. v. Nat'l Football League Prop, Inc.*, 151 F.3d 247 (5th Cir. 1998). The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). "It [Federal Rules] requires the plaintiff to articulate facts, when accepted as true, that "show" that the plaintiff has stated a claim entitling him to relief, i.e., the plausibility of 'entitlement to relief.'" *Bell Atlantic v. Twombly*, 550 U.S. 544, 557 (2007).

To withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). A "plausible claim for relief" is one where the claimant pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. Such a claim "asks for more than a sheer possibility that a defendant has acted unlawfully," and requires more than the assertion of facts "that are 'merely consistent' with a defendant's liability." *Id.* When considering a motion to dismiss for failure to state a claim, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (internal quotation omitted); *Jones v. Alcoa, Inc.*, 339 F.3d 359, 362 (5th Cir. 2003) (same). In other words, a plaintiff must plead a "plausible claim for relief" – one where the claim affirmatively shows "factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. Indeed, a plaintiff must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" to survive a motion to dismiss. *Id.*

## III. ARGUMENT

### A. Plaintiff's Claims Do Not Involve Information Bearing on His "Creditworthiness" and Are Not Actionable Under § 1681g.

Plaintiff alleges that Equifax "truncat[ed] [Plaintiff's] Social Security number" and failed to disclose "Incomplete account numbers, incomplete credit limits, Terms Durations, Frequency, Activity Designator, Date of Last Payment, Actual Payment Amount, Scheduled Payment Amount, Date of Last Activity, Date Maj Del 1st Reported, Charge Off Amount, Deferred Pay Start Date, Balloon Pay Amount, Balloon Pay Date, Charge- off dates, and etc." on some accounts contained in his credit file in violation of Section 1681g of the FCRA. *See* ECF No. 10 at ¶¶18, 20-36. Equifax has no duty to provide Plaintiff with this information, as courts have routinely found such information does not bear on creditworthiness and have granted a consumer reporting agencies' motion to dismiss plaintiff's § 1681g claim under similar circumstances. *See Gordon v. Equifax Info. Servs. LLC*, No. 25-CV-21831, 2025 WL 2765236, at *4 (S.D. Fla. Sept. 29, 2025) (granting Equifax's motion to dismiss Plaintiff's § 1681g claim and holding that "[i]t is unclear whether Gordon seeks to claim that each account contains inaccurate information, and, more importantly, how the report is inaccurate. … Accordingly, the Court finds that Gordon has not satisfied her initial burden to allege an inaccuracy in Equifax's reporting); *Mott v. Transunion LLC*, No. 2:25-CV-10113, 2025 WL 1933950, at *2 (E.D. Mich. July 14, 2025) (granting Transunion's motion to dismiss Plaintiff's § 1681g claim and holding that "Plaintiff did not identify or allege any specific omissions in the report. … Specifically, Plaintiff presumes that her file contains inaccurate information—without identifying any—and thus concludes that Defendant



287188534.v1

must have failed to fully disclose her file. Id. at PageID.714 ("Defendant's failure to provide Plaintiff with a copy of her file has obstructed her ability to verify the accuracy of the information contained in it."). But she identified no inaccuracies and did not plausibly plead that any exist.").

The FCRA, specifically 15 U.S.C. § 1681g, requires consumer reporting agencies ("CRA"), such as Equifax, to disclose certain information in a consumer's file upon a consumer's request. A credit "file" for purposes of § 1681g means "information included **in a consumer report**," and does not include every piece of information that a consumer reporting agency has on a consumer. *Gillespie v. Trans Union Corp.*, 482 F.3d 907, 910 (7th Cir. 2007) (emphasis supplied); *Wimberly v. Experian Info. Sols., Inc.*, 2019 U.S. Dist. LEXIS 218104, at *24 (S.D.N.Y. Dec. 17, 2019) (discussing the expansive and narrow definitions of "file" and expanding *Gillespie*, holding that internal record relating to a CRA's processing of information are not a part of the "file"); *see also Shaw v. Experian Info. Solutions, Inc.*, 891 F.3d 749, 761 (9th Cir. 2018). The FCRA defines the term "consumer report" to mean "any written, oral, or other communication of any information by a consumer reporting agency **bearing on a consumer's credit worthiness** . . . which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for credit." 15 U.S.C. § 1681a(d)(1)(A)) (emphasis supplied).

Information that does not bear on a consumer's creditworthiness is not actionable under the FCRA. *See e.g.*, *Heagerty v. Equifax Info. Servs. LLC*, 447 F. Supp. 3d 1328, 1339 (N.D. Ga. 2020) (holding that data bearing on a consumer's creditworthiness constituted a "consumer report" under the FCRA); *Perez v. Experian*, No. 20-CV-9119 (PAE) (JLC), 2021 U.S. Dist. LEXIS 198281, 2021 WL 4784280, at *9 (S.D.N.Y. Oct. 14, 2021), *report and recommendation adopted*, 2021 U.S. Dist. LEXIS 211987, 2021 WL 5088036 (S.D.N.Y. Nov. 2, 2021) ("[Plaintiff's]

allegations regarding his address changes and gender do not state a claim for inaccurate information under the FCRA as a matter of law."); *see Ali v. Vikar Management, Ltd.*, 994 F. Supp. 492, 497 (S.D.N.Y. 1998) ("[N]o restriction is put on the use of information that is not a 'consumer report' … Address information on a consumer, for example, is not a consumer report because it is not information that bears on any of the characteristics described in 15 U.S.C. § 1681a(d)(1)."); *Williams-Steele v. Trans Union*, No. 12-CV-0310 (GBD) (JCF), 2015 U.S. Dist. LEXIS 16678, 2015 WL 576714, at *2 (S.D.N.Y. Feb. 10, 2015), *aff'd sub nom. Williams-Steele v. TransUnion*, 642 F. App'x 72 (2d Cir. 2016) ("the correct reporting of Plaintiff's telephone number and additional address has no bearing on Plaintiff's credit worthiness or eligibility for credit, and therefore the alleged inaccuracies are not actionable"); *see also Cortez v. Trans Union*, 617 F.3d 688, 711-12 (3d Cir. 2010) (analyzing *Gillespie* and noting that actionable information must be more than purely internal or record-keeping).

In the instant matter, Plaintiff alleges that Equifax somehow violated the FCRA by "truncat[ing] [Plaintiff's] Social Security number" in a consumer file it sent to the Plaintiff. *See* ECF No. 10 at ¶14. Plaintiff also points to numerous out-of-circuit and nonbinding authorities,[2] including an FTC Advisory Opinion from 2000. *See* Fed. Trade Comm'n, Advisory Opinion to Darcy (June 30, 2000). ECF No. 10 at ¶39. These claims are meritless. One district court has found that in some situations scrambling or truncating a consumer's account number is reasonable as a matter of law. *Whitaker v. Trans Union Corp.*, No. CV 03-2551-GTV, 2005 WL 8160827, at *20 (D. Kan. Feb. 3, 2005)("the court determines that, as a matter of law, scrambling or truncating a

[2] *See* ECF No. 14 at p. 2-3. In most of these cases, the plaintiff alleged the data furnisher gave the CRA full account numbers which the agency then truncated. *See, e.g., Maude v. Equifax Info. Servs., LLC*, No. 25-CV-61421-VALLE (S.D. Fla. Nov. 18, 2025) (noting the complaint sufficiently alleges the data furnisher reported the full account numbers to the defendant); *Stafford v. Trans Union, LLC*, No. 4:25-cv-00921-JDK (E.D. Tex. Nov. 17, 2025) (same). Here, Plaintiff does not allege that US Bank, Capital One Bank USA NA, JPMCB Card Servies, Syncb/Sams Club DC Syncb/Lowes, and SCA/Robbins Bros provided Equifax with full account numbers

consumer's account number is a reasonable procedure to protect the consumer's information from potential identity theft. The possibility of holding a credit reporting agency liable for reporting a scrambled or truncated account number that a creditor furnished would lead to absurd results …"). And another district recently specifically found this applies to redacting account numbers. *Walker v. Equifax*, No. 1:21-CV-01045-ELR, 2024 U.S. Dist. LEXIS 210523, at *16 (N.D. Ga. Sep. 23, 2024) ("Plaintiff offered no evidence that his credit report actually contained inaccurate or incomplete information … regarding the disputed accounts … because the account numbers on his credit report simply were not listed in full") (cleaned up).

While Equifax maintains that truncating account numbers is a reasonable policy, Equifax requests dismissal of Plaintiff's claims because under the FCRA, to qualify as a consumer report, the information contained therein **must bear on an individual's <u>creditworthiness</u>**, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living. 15 U.S.C. §1681a (emphasis added.) Truncated account numbers do not qualify as information that bears any impact on the aforementioned. *See Whitaker v. Trans Union Corp.*, No. 03-2551-GTV, 2005 U.S. Dist. LEXIS 51531, at *61 (D. Kan. Feb. 3, 2005); *Walker v. Equifax Info. Sols., LLC*, No. 1:21-CV-01045-ELR, 2024 U.S. Dist. LEXIS 210523, at *16 (N.D. Ga. Sep. 23, 2024). Notably, while the consumer alleges that the account numbers were truncated, he does not allege that other unique information was omitted that could have helped him identify the accounts such as account name, scheduled payment amount, status, account type, credit limit, and balance. *See* ECF No. 10 generally. This is not a situation where no account numbers were included on a consumer report. *Id.* Even accepting Plaintiff's allegations as true, the Amended Complaint fails to state a claim upon which relief can be granted since the FCRA does not mandate disclosure of full account numbers. *See Whitaker v. Trans Union Corp.*, No. 03-2551-GTV, 2005 U.S. Dist.

LEXIS 51531, at *61 (D. Kan. Feb. 3, 2005); *Walker v. Equifax Info. Sols., LLC*, No. 1:21-CV-01045-ELR, 2024 U.S. Dist. LEXIS 210523, at *16 (N.D. Ga. Sep. 23, 2024).

Next, Plaintiff alleges that Equifax made "errors and omissions" regarding "Incomplete account numbers, incomplete credit limits, Terms Durations, Frequency, Activity Designator, Date of Last Payment, Actual Payment Amount, Scheduled Payment Amount, Date of Last Activity, Date Maj Del 1st Reported, Charge Off Amount, Deferred Pay Start Date, Balloon Pay Amount, Balloon Pay Date, Charge- off dates, etc." *See* ECF No. 10 at ¶18. This allegation is similarly meritless since "completeness of data" (e.g., payment history and date of last activity) in a consumer's credit file does not bear on a consumer's creditworthiness. *See Harris v. Trans Union LLC*, No. 1:25-cv-192-MLB-JKL, 2025 U.S. Dist. LEXIS 98701*, at *19 (N.D. Ga. May 23, 2025) (rejecting Plaintiff's FCRA claims premised on omission of a full payment history, finding "the lack of a comprehensive account or payment history is of no matter when the report, viewed as a whole, does not mislead the user about the status of the account."); *Gordon v. Equifax Info. Servs. LLC*, No. 25-CV-21831, 2025 WL 2765236, at *4 (S.D. Fla. Sept. 29, 2025) (granting Equifax's motion to dismiss Plaintiff's § 1681g claim and holding that "[i]t is unclear whether Gordon seeks to claim that each account contains inaccurate information, and, more importantly, how the report is inaccurate. … Accordingly, the Court finds that Gordon has not satisfied her initial burden to allege an inaccuracy in Equifax's reporting); *Mott v. Transunion LLC*, No. 2:25-CV-10113, 2025 WL 1933950, at *2 (E.D. Mich. July 14, 2025) (granting Transunion's motion to dismiss Plaintiff's § 1681g claim and holding that "Plaintiff did not identify or allege any specific omissions in the report. … Specifically, Plaintiff presumes that her file contains inaccurate information—without identifying any—and thus concludes that Defendant must have failed to fully disclose her file … But she identified no inaccuracies and did not plausibly plead that any exist."). Thus, even if

Plaintiff's factual allegations are true, Plaintiff has not stated a claim for which relief may be granted, and Plaintiff's Amended Complaint should be dismissed.

But for the purposes of this Motion to Dismiss only, even if the information Plaintiff claims was inaccurate did bear on creditworthiness - which Equifax denies - Plaintiff is simply mistaken as to the format of his disclosure. Plaintiff disputes a litany of information in his Amended Complaint, including, for example, following: "Incomplete account numbers, incomplete credit limits, Terms Durations, Frequency, Activity Designator, Date of Last Payment, Actual Payment Amount, Scheduled Payment Amount, Date of Last Activity, Date Maj Del 1st Reported, Charge Off Amount, Deferred Pay Start Date, Balloon Pay Amount, Balloon Pay Date, Charge- off dates, and etc." on some accounts contained in his credit file. *See* ECF No. 10 at ¶¶18, 20-36.

Importantly, Plaintiff does not allege that such information exists, or even that such information could exist (for example, Plaintiff contends that every referenced account is missing balloon payment data, but does not allege any of these accounts even required a balloon payment, which is not a particularly common occurrence in consumer accounts). He just takes the position that nonexistence constitutes inaccuracy.

But Equifax cannot fabricate information to fill in these tradelines. The "FCRA does not specifically require a reporting agency to affirmatively add credit data to a report." *Cohen v. Equifax Info. Servs., LLC*, No. 18-CV-6210 (JSR), 2019 WL 5200759, at *5 (S.D.N.Y. Sept. 13, 2019), *aff'd*, 827 F. App'x 14 (2d Cir. 2020) (citing *Davis v. Equifax Info. Servs. LLC*, 346 F. Supp. 2d 1164, 1172 (N.D. Ala. 2004)). Courts have consistently held that a CRA, like Equifax, is not required to include all existing or derogatory or favorable information about a consumer in their reports. *See Childress v. Experian Info. Sols.*, Inc., 790 F.3d 745, 747 (7th Cir. 2015) (explaining that it would be unreasonable to require the reporting of additional information that

would have made the credit report "fully precise" and citing the Federal Trade Commission for the notion that "consumer reporting agencies are not required to include all existing or derogatory or favorable information about a consumer in their reports"); *Aclys Int'l, LLC v. Equifax, Inc.*, No. 2:08-CV-00954, 2010 WL 1816248, at *3 (D. Utah May 5, 2010) ("[The] FCRA does not require credit reporting agencies to include all relevant information about an individual, only that the information present on a credit report be accurate"), aff'd sub nom. *Aclys Int'l v. Equifax*, 438 F. App'x 689 (10th Cir. 2011); *Swanson v. Central Bank & Trust Co.*, No. CIV.A. 5:03-255-JMH, 2005 WL 1719363, at *2 (E.D. Ky. July 14, 2005) (holding that "the FCRA requires only that the information contained in a credit report be accurate," so plaintiffs' claims "that their credit reports were incomplete and misleading because certain information was deleted" could not prevail)"; *Hammer v. Equifax Info. Servs., LLC*, No. 3:18-CV-1502-C, 2019 WL 7602463, at *3 (N.D. Tex. Jan. 16, 2019) (dismissing FCRA claims based on CRA's alleged failure to include consumers credit card account on his credit report, explaining "the FCRA does not impose an affirmative duty upon credit reporting agencies to include all relevant information about Plaintiff")."

Therefore, Equifax has no legal obligation to fabricate information and fill in these tradelines. Equifax's reporting was accurate and complete. The FCRA requires Equifax to disclose information in a consumer's file that bears on creditworthiness. But some information simply does not appear in a consumer's file, and that is not inaccurate. Plaintiff takes issue with information that Equifax does not have. Thus, Plaintiff has not stated a claim for which relief may be granted, and Plaintiff's Amended Complaint should be dismissed.

### B. Plaintiff's Lacks Article III Standing

#### 1. Legal standard under Fed. R. Civ. P. 12(b)(1).

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges subject matter jurisdiction. "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute. . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) (quotations omitted). Article III of the U.S. Constitution limits the judicial power of the federal courts to actual "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. To invoke this power, a litigant must have standing, *Hollingsworth v. Perry*, 570 U.S. 693 (2013), and the plaintiff bears the burden of proving standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo v. Robinson*, 136 S. Ct. 1540, 1547 (2016). "The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Id*.

The "irreducible constitutional minimum" of standing consists of three elements. *Lujan*, 504 U.S. at 560. The plaintiff must prove (1) an injury in fact (2) fairly traceable to the challenged conduct (3) that is likely to be "redressed by a favorable judicial decision." *Hollingsworth*, 570 U.S. at 704. Relevant here, an injury in fact requires "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks and citations omitted); *Spokeo*, 136 S. Ct. at 1545 ("[T]he injury-in-fact requirement requires a plaintiff to allege an injury that is both concrete and particularized"). "[A] 'concrete' injury must be 'de facto'; that is, it must actually exist" in a "'real,' and not 'abstract'" sense. *Spokeo*, 136 S. Ct. at 1548.

"Injury in fact is a constitutional requirement, and it is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would

not otherwise have standing." *Id.* at 1547–48 (citation and internal quotation marks omitted); *see Gladstone, Realtors v. Bellwood*, 441 U.S. 91, 100 (1979) ("In no event . . . may Congress abrogate the Art. III minima"). In other words, "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 136 S. Ct. at 1549. *Spokeo* affirmed the standard already followed in the Fifth Circuit. *See, e.g., Deanda v. Becerra*, 96 F.4th 750, 755–56 (5th Cir. 2024)("To have standing to sue in federal court, a plaintiff must show he has suffered an injury traceable to the defendant which the court's judgment would likely redress. *756 Laufer v. Mann Hosp., L.L.C., 996 F.3d 269, 272 (5th Cir. 2021) (*citing Spokeo*, 578 U.S. at 338, 136 S. Ct. 1540).").

### 2. Plaintiff Cannot Identify Any Injury-In-Fact Resulting From Equifax's Alleged Conduct.

Plaintiff has also not alleged any "concrete and particularized" injury of the type required by Article III for this Court to maintain subject matter jurisdiction over Plaintiff's claims. Rather, Plaintiff's Amended Complaint only includes insufficient, boilerplate allegations that he "suffered concrete and particularized harm, including, without limitation: loss of credit, credit damage, damage to reputation, embarrassment, humiliation, and other emotional distress" without an explanation. ECF No. 10, ¶ 76.

At bottom, Plaintiff's Amended Complaint amounts to nothing more than an attempted "gotcha" claim regularly rejected by the courts. *See, e.g., Joseph v. Experian Info. Sols., Inc.*, No. 1:18-CV-03443-WMR-RGV, 2019 WL 5458009, at *8 (N.D. Ga. July 3, 2019), report and recommendation adopted, No. 1:18-CV-3443-WMR, 2019 WL 5460659 (N.D. Ga. Aug. 13, 2019) (collecting cases). Among other reasons, such claims have been dismissed for lack of standing. *See id.* at *3-5. After reiterating that the "Supreme Court has emphasized that Article III standing requires a concrete injury even in the context of a statutory violation," the *Joseph* court held that

"a technical impairment of a consumer's ability to monitor a credit report or file that carries no actual consequences for the consumer does not rise to the level of an Article III injury, even an Article III intangible injury, and leaves the Court with a bare procedural violation, attenuated from any real harm or imminent risk of harm, that Congress cannot convert into Article III standing." *Id.* at *5 (internal quotations and citations omitted); *see also Whiteford v. Equifax Inc.*, No. CV 2:21-CV-94, 2021 WL 3683293, at *4 (W.D. Pa. Aug. 18, 2021) ("Since [plaintiff] has identified no discrepancies of merit, the Court finds that [he] has not shown a concrete injury."); *Dawkins v. Experian Info. Sols., Inc.*, No. 6:22-CV-00774T-MCJDA, 2022 WL 17668425, at *4, 6 (D.S.C. Oct. 19, 2022), *report and recommendation adopted*, No. 6:22-CV-774-TMC, 2022 WL 17351761 (D.S.C. Dec. 1, 2022) (dismissing action where Plaintiff "failed to allege facts to show a concrete injury" and "fail[ed] to present allegations to show that any of the[] four reports generated by Defendant and provided to Plaintiff [did] not constitute his full consumer credit file.").

**C. Plaintiff's Willfulness Claim Fails as a Matter of Law.**

Even if the Court considers Plaintiff's willfulness claim, it fails as a matter of law because Plaintiff has not, and cannot, plead the required elements of a willfulness claim. ECF. No 10 at ¶¶ 71-78. Under such circumstances, willfulness claims may be properly dismissed on a 12(b)(6) or 12(c) motion. *See Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1282-83 (11th Cir. 2017). "Willfully" means either knowingly or with reckless disregard. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 58–59 (2007). To state a willfulness claim, Plaintiff must allege: (1) that Equifax had a practice or policy that was objectively unreasonable in light of the FCRA's statutory language; and (2) how Equifax ran a risk of violating the FCRA that was substantially greater than the risk associated with a reading that was merely careless. *Id.*; *Levine v. World Fin. Network Nat'l Bank*, 554 F.3d 1314, 1318 (11th Cir. 2009).

Here, Plaintiff has unequivocally failed to plead his willfulness claim. Plaintiff must show that Equifax acted in a manner that made it highly probable harm would follow. *Safeco Ins. Co.*, 551 U.S. at 69. Where the statutory text and authoritative guidance allow for more than one reasonable interpretation, a defendant merely adopting one such interpretation cannot be found to have willfully violated the FCRA. *Id*. at 70 n.20. A CRA's interpretation of its obligations under the FCRA can be erroneous and still not be considered willful. *Id*. at 69–70. Stated another way, an interpretation that favors the agency must be "objectively unreasonable" under either the text of the Act or guidance from a court of appeals or regulatory authority that might have warned a defendant away from the view it took. Levine, 554 F.3d at 1318. Plaintiff has failed to identify a single practice or policy of Equifax that is objectively unreasonable. ECF. No 10, generally. He merely argues, in general vagaries and conclusory statements, that Equifax's violations of the FCRA were "willful." ECF. No 10, at ¶¶ 71-78. Neither the failure to correct alleged errors after receiving notification of an alleged inaccuracy in a consumer's file, nor the mere existence of inaccuracies in a consumer's report alone, can amount to willful noncompliance with the FCRA. *See Barrepski v. Capital One Bank* (U.S.A.) N.A., No. 11-30160, 2014 WL 9355983, at *12 (D. Mass. Jan. 24, 2014); *Hill v. Equifax Info. Servs.,* LLC, 974 F. Supp. 2d 865, 869 (M.D.N.C. 2013); *Johnson v. Equifax*, Inc., 510 F. Supp. 2d 638, 648 (S.D. Ala. 2007) (citation omitted); *Valvo v. Trans Union LLC*, No. 04-70S, 2005 WL 3618272, at *8 (D.R.I. Oct. 27, 2005). Going even further, a CRA's failure to identify inaccurate information after receiving a dispute is still not enough to establish a willful violation of the FCRA. *Robertson v. Experian*, No. 1:CV-09-0850, 2010 WL 1643579 (M.D. Pa. Apr. 22, 2010).

In this case, Plaintiff has not, and cannot, plead the required elements of a willfulness claim. Thus, Equifax's Motion to Dismiss should be granted in its favor on Plaintiff's willfulness claim be dismissed, with prejudice.

## IV. CONCLUSION

For the reasons set forth herein, Equifax respectfully requests the Court grant its Motion, dismiss Plaintiff's Amended Complaint, and grant all other relief as the Court deems necessary.

Dated: March 30, 2026

Respectfully submitted,

By: */s/ Forrest M. "Teo" Seger III*

**FORREST M. "TEO" SEGER III**
Texas Bar No. 24070587
Southern District Bar No. 125540
TSeger@clarkhill.com
CLARK HILL PLC
2301 Broadway St.
San Antonio, Texas 78215
(210) 250-6000
(210) 250-6100 (Fax)

**ATTORNEY FOR DEFENDANT,**
**EQUIFAX INFORMATION SERVICES LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2026, a true and correct copy of the foregoing *Defendant Equifax Information Services LLC's Motion to Dismiss Plaintiff's Amended Complaint* was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Forrest M. "Teo" Seger III*
FORREST M. "TEO" SEGER III